**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
                                  :
DANIEL AMOS,                      :
                                  :      Civil Action
             Plaintiff,          :      No. 06-cv-1892 (NLH)
                                  :
      v.                          :      OPINION
                                  :
CORRECTIONAL MEDICAL             :
SERVICES, INC., et al.,          :
                                  :
             Defendants.         :
                                  :
```

**APPEARANCES**:

LAURA A. FELDMAN, ESQ.
ROSEMARY PINTO, ESQ.
FELDMAN & PINTO
1804 LOCUST Street, 2R
Philadelphia, PA 19103
*Attorney for Plaintiff Daniel Amos*

JEFFREY M. SCOTT, ESQ.
KERRI E. CHEWING, ESQ.
GARY J. LESNESKI, ESQ.
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
PO BOX 3000
HADDONFIELD, NJ 08033-0968
*Attorney for Defendants Correctional Medical Services, Inc.,*
*William Andrade, James J. Neal, M.D., James Ruman, R.N., Rock*
*Welch, and Abu Ahsan, M.D.*

**HILLMAN, District Judge**

In this action, Plaintiff, Daniel Amos, asserts that Defendants were deliberately indifferent to his serious medical needs and discriminated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, et seq., by failing to diagnose and treat his hepatitis C ("HCV") while he was incarcerated. Before the Court is a Motion for Summary

Judgment filed by Defendants Correctional Medical Services, Inc. ("CMS"), William Andrade, James J. Neal, M.D., James Ruman, R.N., Rock Welch, and Abu Ashan, M.D. (collectively, "Defendants"). Also before the Court is a Motion to Strike Plaintiff's Opposition to Defendants' Motion for Summary Judgment.  For the reasons expressed below, Defendants' Motion to Strike will be denied, but their Motion for Summary Judgment will be granted.

I.   **JURISDICTION**

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983, as well as 42 U.S.C. §§ 12131, et seq.  Accordingly, this Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331.

II.   **BACKGROUND AND PROCEDURAL HISTORY**

After having been incarcerated in Wisconsin and Illinois, Plaintiff was transferred into the custody of the New Jersey Department of Corrections ("NJDOC") in 1995.  At the time of his transfer to the NJDOC, Plaintiff denied any history of health problems or IV drug use.  Plaintiff was first diagnosed with HCV in January 2002, when testing revealed a high level of the virus in his system.

Following his diagnosis, a number of tests and evaluations were performed in order to determine the best course of action with respect to Plaintiff's illness.  In October 2002, a liver biopsy of Plaintiff was performed, which confirmed that he had

2

chronic HCV and stage two fibrosis.  Plaintiff's HCV was also evaluated for genotype and determined to be genotype 1a. Additionally, a psychiatric evaluation was performed in order to confirm that Plaintiff's mental health history would not prevent drug therapy treatment.  Plaintiff was thereafter sent for a consult with a gastroenterologist.  On November 21, 2002, Plaintiff was evaluated by Dr. Kathleen Casey.  At that time, Dr. Casey discussed Plaintiff's test results with him and advised him of his treatment options, including initiating drug therapy for his HCV or waiting and conducting another liver biopsy in two years.  Plaintiff elected to proceed with drug therapy and requested specific medications.  In December 2002, Plaintiff was educated about his HCV and the side-effects of HCV medications.

In January 2003, drug therapy was commenced for Plaintiff's HCV.  During the entire course of his treatment, Plaintiff was closely monitored and suffered no serious side-effects or additional liver damage.  Plaintiff successfully completed the 48 weeks of drug therapy, achieving a sustained virologic response. In other words, six months after completion of the 48 week drug therapy treatment, laboratory tests failed to detect any HCV in Plaintiff.  The likelihood that Plaintiff's HCV will recur is less than one percent.  In November 2004, Plaintiff was transferred from the NJDOC to the custody of the Federal Bureau of Prisons.

Plaintiff filed his Complaint in this matter on April 21, 2006, alleging six separate counts against Defendants and Louis C. Tripoli, M.D. ("Tripoli").  Since that time, the parties have stipulated to the dismissal of Tripoli, as well as to the dismissal of four of the initial six counts with prejudice. Accordingly, all that remains of the Complaint is Count I, which asserts under Section 1983 that Defendants were deliberately indifferent to Plaintiff's serious medical needs, and Count VI, which asserts that Defendants discriminated against Plaintiff in violation of the ADA.  Defendants now move for summary judgment on both counts.

## III. <u>DISCUSSION</u>

### A.   Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing

4

substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.   Section 1983 Claim**

In Count I of the Complaint, Plaintiff alleges that Defendants violated Section 1983 by showing deliberate indifference to his health and welfare in violation of the Eighth

Amendment.  To state a claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States.  <u>See, e.g.</u>, <u>Shuman ex rel. Shertzer v. Penn Manor School Dist.</u>, 422 F.3d 141, 146 (3d Cir. 2005); <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995); <u>Moore v. Tartler</u>, 986 F.2d 682, 685 (3d Cir. 1993).  There is no dispute that CMS was under contract with the State to provide medical care to inmates at all times relevant to this case and that Defendants were acting under color of state law.  Accordingly, the only question is whether Plaintiff was denied a constitutional or other legal right.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-105 (1976).  To state a claim for violation of this Eighth Amendment right, a prisoner must show that: (1) their medical needs are serious; and (2) the defendants showed deliberate indifference to those needs.  <u>Id.</u>  Defendants argue that at no time did Plaintiff have a serious medical need.  Moreover, Defendants argue that Plaintiff's healthcare providers were in no way deliberately indifferent to his medical needs.  Indeed, Defendants assert that Plaintiff was effectively cured of his HCV as a result of the treatment he was provided.

6

Alternatively, Defendants argue, vicarious liability does not exist under Section 1983. The Court will first address the issue of whether Plaintiff's healthcare providers were deliberately indifferent.

"Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). It may only be found where there has been an unnecessary and wanton infliction of pain. See Estelle, 429 U.S. at 104. A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended

treatment.  <u>See</u> <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999); <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987).  The Third Circuit has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  <u>Atkinson v. Taylor</u>, 316 F.3d 257, 266 (3d Cir. 2003); <u>see also</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993); <u>White</u>, 897 F.2d at 110; <u>Lanzaro</u>, 834 F.2d at 346 ("[D]eliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.'").

In this case, Plaintiff argues in his Opposition Brief that his healthcare providers, who were contracted by Defendants, were deliberately indifferent in failing to diagnose or treat him for HCV despite evidence of the disease in order to save money.[1]  In

---

[1] After receiving an automatic extension pursuant to L. Civ. R. 7.1(d)(5), the deadline for Plaintiff to oppose Defendants' Motion for Summary Judgment was February 1, 2008.  Plaintiff did not actually file his opposition, however, until October 9, 2009. On the basis of this eight month delay, Defendants filed a Motion to Strike Plaintiff's opposition.  While the Court notes that it has the authority to reject Plaintiff's opposition brief for such untimeliness, <u>see</u> <u>Kabacinski v. Bostrom Seating, Inc.</u>, 98 Fed. Appx. 78, 82 (3d Cir. 2004) (affirming district court's rejection of an opposition brief that was filed two days late), it declines to do so.  In so ruling, the Court in no way condones the unexcused delay of Plaintiff's counsel in filing the opposition brief.  However, recognizing that the delay has not resulted in any undue prejudice to Defendants, the Motion to Strike shall be denied.

support of this argument, Plaintiff asserts that his healthcare providers "plainly ignored the signs and symptoms" that he had HCV.  Specifically, the report of Plaintiff's expert, Bennet Cecil, M.D., asserts that an August 14, 2000 list of Plaintiff's problems contained in his medical records included HCV.  Dr. Cecil also asserts that abnormal liver tests were reported for Plaintiff on January 11, 2001, which presumably should have led to further testing and treatment.  Even after Plaintiff's diagnosis with HCV, Dr. Cecil asserts, treatment was delayed for one year.  The delay in diagnosis, Plaintiff asserts, made him "less likely to have a favorable treatment outcome and more likely to suffer liver cancer, liver failure, cirrhosis, and early death."  Further, Plaintiff asserts that the delay in his treatment allowed his condition to progress to stage two fibrosis.

The assertions of Dr. Cecil, which Plaintiff relies upon in support of his argument that he should have been diagnosed with HCV and treated for it sooner, however, are based on two complete misstatements of fact.  First, Dr. Cecil's report asserts that a list of medical problems on August 14, 2000 included HCV. Examination of that document, however, reveals that the so-called "problem list" is nothing more than the cover sheet of a chart summary prepared on April 7, 2004.  This cover sheet contained a cumulative synopsis of all Plaintiff's patient information,

medical problems, medications, directives, and allergies for the period of time he was incarcerated at South Woods State Prison-Facility Three ("South Woods").  The cover sheet is then followed by the remainder of the chart summary, which consists of each chart entry made during the course of Plaintiff's incarceration at South Woods and the date each was entered.  The first such entry was made on August 14, 2000 to document a TB screening given to Plaintiff, and has nothing to do with the list of cumulative medical problems contained in the cover sheet.

Second, Dr. Cecil's report asserts that Abnormal liver tests revealing ALT of 366 and AST of 123 were reported for Plaintiff on January 11, 2001, and that there test results were ignored. Again, however, examination of the underlying medical records reflects that no such results were reported on January 11, 2001. In fact, the liver tests that revealed Plaintiff's ALT to be 366 and AST to be 123 were reported on January 10, 2002; one year later than claimed by Dr. Cecil.  Moreover, far from ignoring the abnormal test results, an HCV test was ordered for Plaintiff only five days later, on January 15, 2002.  Three days thereafter, on January 18, 2002, the lab results revealed for the first time that Plaintiff suffered from HCV.

Without the benefit of these two misstatements, Plaintiff has failed to present any evidence capable of creating a genuine issue of material fact with respect to whether Plaintiff should

have been diagnosed with HCV sooner than he was.  The only remaining question then is whether Defendants were deliberately indifferent to Plaintiff's HCV following his diagnosis.  On this issue, it seems quite clear that the answer is no.

Plaintiff asserts that Defendants delayed treating his HCV after its diagnosis until October 2002, when he underwent a biopsy, because Defendants did not begin "passing through" the costs of HCV treatment to the NJDOC until that time.  Prior to October 2002, Plaintiff asserts, CMS was responsible for the costs of treating HCV under the terms of its contract with the NJDOC.  In October 2002, however, a carve out was negotiated whereby the NJDOC would bear the costs of HCV treatment.  Accordingly, Plaintiff argues, it was in CMS' financial interests to delay his treatment until its costs would be born by the NJDOC.

However, the record contains evidence that Plaintiff was evaluated and counseled numerous times for his HCV between the time when it was initially diagnosed on January 18, 2002 and a biopsy of his liver was conducted on October 10, 2002.  Indeed, Plaintiff's own expert, Dr. Cecil, acknowledges several of these instances.  On January 28, 2002, Plaintiff was counseled regarding his HCV.  Plaintiff was counseled again about HCV on May 28, 2002, and given reading material about his condition.  Additional liver tests were conducted on June 10, 2002.

11

Thereafter on July 23, 2002, Plaintiff was evaluated for HCV treatment even though the liver test results were not very elevated, because Plaintiff wanted treatment.  On August 13, 2002, Plaintiff was seen by another doctor who discussed his condition with him and explained the treatment process and Plaintiff's recent lab results.  Plaintiff was again evaluated for his HCV on August 21, 2002.  Finally, on September 5, 2002, a biopsy of Plaintiff's liver was ordered.  In the face of this evidence, the Court finds that no reasonable jury could conclude that Defendants were deliberately indifferent to his medical condition between the time he was first diagnosed with HCV and the time his liver biopsy was conducted.

The Court notes that Plaintiff also seems to rely upon the assertion of Dr. Cecil in his report that "[e]ven when the HCV antibody test returned positive, the treatment was delayed for one year."  However, this dispute over the merits of delaying HCV drug therapy for the additional testing and counseling outlined above amounts to nothing more that the type of disagreements over medical judgments that have been held to not amount to Eighth Amendment claims.  See White, 897 F.2d at 110.  Even assuming that Defendants were mistaken and Plaintiff should have received HCV drug therapy immediately after his diagnosis, such a mistake in judgment would at most amount to a medical malpractice claim, not an Eighth Amendment violation.  See Estelle, 429 U.S. at

12

105-06; <u>White</u>, 897 F.3d at 110.

Moreover, even assuming *arguendo* that Plaintiff was able to demonstrate a genuine issue of material fact with respect to the delay of drug therapy following his diagnosis, Plaintiff cannot demonstrate that he suffered any damages as a result of the delay.  As explained by Defendants' expert, Carroll B. Leevy, M.D., "[w]hile any delay in treatment is regrettable the period of delay was not long enough to have adverse effect on [Plaintiff's] ability to be cured."  After completion of his 48 weeks of drug therapy, Plaintiff was effectively cured.

Although Plaintiff asserts that the delay in administering HCV drug therapy allowed him to progress to stage two fibrosis, this is not accurate.  Plaintiff's own expert, Dr. Cecil, opined that Plaintiff may have limited his fibrosis to either stage zero or one only "if his evaluation and treatment had occurred in 1998-99."  However, as set forth above, there is no evidence to suggest that Plaintiff should have been diagnosed any earlier than he was.  Accordingly, there is no evidence to suggest that the immediate administering of HCV drug therapy could have prevented Plaintiff's fibrosis from reaching stage two.

In short, far from inflicting the type of unnecessary and wanton pain upon Plaintiff that is necessary for a claim of deliberate indifference, <u>see</u> <u>Estelle</u>, 429 U.S. at 104, Defendants effectively cured him of his illness.  Accordingly, the Court

13

finds that no genuine issue of material fact exists with respect to Count I.[2]  Defendants' Motion for Summary Judgment is therefore granted with respect to Count I, which is dismissed in its entirety.

### C. ADA Claim

In Count VI of the Complaint, Plaintiff alleges that he was denied medical treatment "solely on the basis of his HCV disability."  The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  In order to state a *prima facie* case under the ADA, a plaintiff must demonstrate that: "(1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities or a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability."  Bowers v. National Collegiate Athletic Assn., 9 F. Supp. 2d 460, 475 (D.N.J. 1998).  In this case, Defendants argue that Plaintiff has failed to demonstrate that he suffers from a qualifying disability.

---

[2] Having determined that Plaintiff cannot demonstrate that Defendants were deliberately indifferent to his medical condition, the Court need no reach the issues of whether his medical condition was serious or whether vicarious liability is available under Section 1983 in this case.

Although Plaintiff's Complaint asserts that HCV is a qualified disability under the ADA, numerous courts have held that HCV alone, without a demonstrate of how it has limited a major life activity, is not enough to qualify as a disability. See, e.g., Furnish v. SVI Systems, Inc., 270 F.3d 445, 450 (7th Cir. 2001 (noting that "even a serious illness such as Hepatitis B does not equate with a disability" under the ADA); Sussle v. Sirina Protection Systems Corp., 269 F. Supp. 2d 285, 307 (S.D.N.Y. 2003) (holding that plaintiff failed to show that his HCV substantially limited a major life activity and so it did not qualify as a disability).

Under the ADA, "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(c).  In order to demonstrate such a disability, a plaintiff "must show that she has an impairment; identify the life activity that she claims is limited by the impairment; and prove that the limitation is substantial." Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378, 382 (3d Cir. 2004).  Here, Plaintiff has made absolutely no such showing.  Indeed, Plaintiff has not even opposed the Motion for Summary Judgment on this count.  Accordingly, the Court finds that Plaintiff has failed to present any evidence capable of creating a genuine issue of material fact with respect to the issue of whether his HCV impacted any major

life activities.  Defendants' Motion for Summary Judgment is therefore granted with respect to Count VI, which is dismissed in its entirety.

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, Defendants' Motion to Strike is denied, but their Motion for Summary Judgment is granted.  An Order consistent with this Opinion will be entered.


Dated: June 30, 2009          s/ Noel L. Hillman
                              HON. NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

16